**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RASU TAYLOR,                                                     :

             Plaintiff,                           :        Case No. 3:07cv454

 vs.                                                             :        District Judge Walter H. Rice

SHAWN F. WALER, et al.,                       :        Magistrate Judge Sharon L. Ovington

             Defendants.                          :

---

## REPORT AND RECOMMENDATION

---

## I.       INTRODUCTION

This matter is before the Court upon a motion for summary judgment filed by

Defendants Shawn F. Waler, Charles Kash and Robert Hartman (Doc. #20), as well as

their reply memorandum in support of that motion.  (Doc. #30).  Also before the Court are

Plaintiff's response to Defendants' summary judgment motion, including a motion to stay

Defendants' motion for summary judgment (Doc. #23), and the record as a whole.

## II.      PROCEDURAL BACKGROUND/THE PARTIES' CONTENTIONS

Plaintiff's *pro se* complaint setting forth civil rights claims against the three above-

named Defendants, all identified as employees of the Huber Heights Police Department,

was filed in this Court on November 28, 2007.  (Doc. #3).  Plaintiff, an inmate currently

incarcerated at the London Correctional Institution,[1] alleges that in the course of "a simple traffic stop" on December 17, 2006, Defendants "without just cause" collectively subjected Plaintiff to multiple acts of physical force – including pinning him to the ground, beating him, and using pepper spray and a taser gun on him, even after he was handcuffed – resulting in permanent injuries to his body. (*Id.*, p. 5). Plaintiff requests monetary damages, plus fees and costs.

On August 6, 2008, Defendants filed a joint motion for summary judgment as to Plaintiffs' complaint in its entirety. (Doc. #20). Defendants assert that they are entitled to judgment as a matter of law, claiming both that each instance of force used against Plaintiff was objectively reasonable under the circumstances then existing and thus did not violate Plaintiff's constitutional rights, and that they are protected by qualified immunity. Their motion is supported by each Defendant's affidavit attesting to Plaintiff's provocation and resistance, purportedly necessitating the degree of force used (*see id.*, Exhs. A, B &C), as well as the affidavit of non-party Antuan Carpenter, identified as a former cell mate of Plaintiff, who avers that Plaintiff "bragged" about the circumstances surrounding the traffic stop which led to Plaintiff's arrest. (*Id.*, Exh. D). Specifically, Mr. Carpenter's affidavit states that Plaintiff said he had attempted to flee from the police officer who initiated the traffic stop, had "tried to get the police officer's firearm" when that officer pursued Plaintiff and a struggle ensued, and had intended "to get the officer's firearm and

---

[1]Although Plaintiff apparently was incarcerated at the Lebanon Correctional Institution at the time of filing his complaint (Doc. #3, p. 2), the record indicates that he subsequently was moved to this other correctional facility.

'pop' (shoot) the officer before any other officers arrived." (*Id.*, Exh. D, ¶¶6-8). Defendants also provided documentation showing that as a result of the December 17, 2006 incident, Plaintiff was indicted on a variety of charges (*id.*, Exh. F),[2] and ultimately was convicted of cocaine possession. (*Id.*, Exh. G).

Absent a response from Plaintiff, on September 3, 2008, this Court entered an Order directing Plaintiff to show cause why Defendants' motion for summary judgment should not be granted. (Doc. #22). On September 23, 2008, Plaintiff responded with a *pro se* filing entitled "Motion to Stay Defendant's [sic] Motion for Summary Judgment." (Doc. #23). In that document, Plaintiff suggests that Defendants "misconstrued the facts to mislead this court" (*id.*, p. 1), and that Defendants had not yet responded to Plaintiff's discovery requests. (*Id.*, pp. 1, 3). In addition to listing trial transcript page numbers at which Defendants supposedly testified in a manner inconsistent with the facts as set forth in their affidavits submitted here (*see, e.g., id.*, ¶¶ I, II, VI, VII), Plaintiff discounts the Carpenter affidavit as "purely hearsay." (*Id.*, ¶ III). Plaintiff also includes his own affidavit, setting forth an account of the December 17 incident that differs significantly from Defendants' versions (Doc. #23, Taylor Affidavit); attaches pages of what appear to be transcripts of testimony related to Plaintiff's case (*id.*, Exh. A(1)-(3)); and attaches copies of what are represented to be his unanswered discovery requests. (*See id.*).

_____

[2]Although these documents reflect that Plaintiff was indicted, *inter alia*, for assaulting a police officer and attempting to remove his weapon (*see* Doc. #20, Exh. F), the only significance of those charges to our present inquiry is the fact that Plaintiff was <u>not</u> convicted thereof (*see id.*, Exh. G), and the facts underlying those charges thus have not been definitively established.

Although somewhat vaguely articulated, implicit in Plaintiff's responsive document are two separate arguments: a) that the absence of Defendants' discovery responses hindered his ability to respond more thoroughly in opposition to the summary judgment motion, and b) that disputed issues of material fact nonetheless preclude summary judgment in Defendants' favor. Accordingly, Plaintiff seeks two alternative forms of relief: that the Court "stay or deny" Defendants' motion for summary judgment. (Doc. #23, pp. 1, 4).

On October 10, 2008, Defendants followed with a motion to stay their own pending motion for summary judgment. (Doc. # 26). Citing a "desire to depose Plaintiff concerning the facts contained in his affidavit" (*id.*, p. 1), Defendants in essence requested an extension of time until after Plaintiff's deposition could be completed in order to file their reply in support of summary judgment.[3] The Court granted an extension.

Consistent with their motion to stay, on October 15, 2008, Defendants filed a motion in accordance with Fed. R. Civ. P. 30(a)(2)(B)[4] for leave to depose Plaintiff. (Doc. #27). Upon receiving the Court's approval, Defendants filed a notice of their intention to take Plaintiff's deposition on November 6, 2008. (Doc. #29). A subsequent motion filed by Defendants indicates that Plaintiff's deposition was completed on that date. (*See* Doc. #31, p. 2).

Defendants filed a reply memorandum on December 2, 2008. (Doc. #30). In that

---

[3]Defendants' motion to stay also accurately observes that in responding to summary judgment, Plaintiff "appears to allege a new claim for deliberate indifference to medical needs." (Doc. #26, pp. 2-3; *see* Doc. #23, Taylor Affidavit, ¶¶ 16-17). Because no such claim appears in Plaintiff's complaint, however (*see* Doc. #3), the Court has not addressed herein the facts alluding to "deliberate indifference" that appear in Plaintiff's affidavit.

[4]This Rule requires the Court's permission in order to depose someone "confined in prison."

reply, Defendants argue that Plaintiffs' attempt to avoid summary judgment by advancing supposed "disputed facts" fails to create any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). Specifically, Defendants contend that no duty exists to warn a suspect prior to using a taser, that the force used to subdue Plaintiff was not unreasonable, that Carpenter's affidavit qualifies as an admission by Plaintiff and thus is not hearsay, and that proof of "combativeness" on Plaintiff's part is unnecessary to justify Defendants' use of force. (*Id.*, pp. 1-4). They urge that their summary judgment motion should be granted.

Subsequently, Defendants filed a motion to extend discovery, for the limited purpose of obtaining copies of Plaintiff's medical records related to the injuries claimed in his complaint. (Doc. 31). Although the Court granted the requested discovery extension through February 10, 2009, the limited scope of any remaining discovery thus authorized has no bearing on the matters before the Court as to the pending summary judgment motion, which is ripe for decision.

## III. APPLICABLE STANDARDS

The threshold issue presented by a motion for summary judgment is whether or not the case presents a proper jury question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A proper jury question exists where the record contains a genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 322; *see also Anderson*, 477 U.S. at 247. If no genuine dispute exists as to any material fact, then the moving party is entitled to judgment as a matter of law and summary judgment is warranted. *See* Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at

322; *Anderson*, 477 U.S. at 247.

A defendant seeking summary judgment bears the initial burden of showing that the plaintiff has failed "to establish an essential element of his case upon which [the plaintiff] would bear the ultimate burden at trial." *Celotex*, 477 U.S. at 322; *see Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 403 (6th Cir. 1992). If the defendant makes this showing, the plaintiff may not rely on the bare allegations of the complaint "or on the hope that the trier of fact will disbelieve [the defendant's] denial of a disputed fact . . ." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Instead, the plaintiff must "'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting in part *Anderson*, 477 U.S. at 257); *see Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994); *see also Guarino,* 980 F.2d at 403.

Affirmative evidence is sufficient if, construing it in the plaintiff's favor, it would permit a reasonable jury to find in the plaintiff's favor. *See Anderson*, 477 U.S. at 248; *see Guarino*, 980 F.2d at 403. Affirmative evidence therefore must consist of "more than a scintilla of evidence" and accomplish more than creating "some metaphysical doubt" about a factual issue. *See Street*, 886 F2d at 1479-80 (and cases cited therein). If the plaintiff fails to present such affirmative evidence, there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact . . ." *Anderson*, 477 U.S. at 247-48; *see also Celotex*, 477 U.S. at 322-23; *Guarino*, 980 F.2d at 403.

Rule 56(c) limits the materials to be considered on a motion for summary judgment

to "the pleadings, the discovery and disclosure materials on file, and any affidavits" which show that there is no genuine issue requiring trial. Affidavits supporting or opposing such a motion

> must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.

Fed. R. Civ. P. 56(e)(1). In discharging its obligation to present affirmative evidence in response to a properly-supported summary judgment motion, the party opposing judgment also must respond "by affidavits or as otherwise provided in this rule." Fed. R. Civ. P. 56(e)(2).

"While pro se litigants are afforded significant leeway . . . , those who proceed without counsel must still comply with the procedural rules that govern civil cases." *Frame v. Superior Fireplace*, 74 F. Appx. 601, 603 (6th Cir. 2003) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *McNeil v. United States,* 508 U.S. 106, 113 (1993)); *see also Moore v. Holbrook*, 2 F.3d 697, 702 (6th Cir. 1993) (Batchelder, J., dissenting) (*pro se* status "does not exempt [a plaintiff] from the requirements that he properly plead his case, make out an actionable cause, and show that if he proved all he claims, he would prevail at trial") (citing *Hughes v. Rowe,* 449 U.S. 5, 10 (1980)).

## IV. DISCUSSION

### a. *Plaintiff's Motion to Stay Defendants' Motion for Summary Judgment*

Couched as a "Motion to Stay," Plaintiff's only filing in response to Defendants' summary judgment motion and the Court's show cause Order alludes to a single possible ground which could be construed to justify delaying decision on Defendants' motion for summary judgment – Plaintiff's outstanding discovery requests purportedly propounded to Defendants. (*See* Doc. #23, pp. 1, 3). The record contains no later indication as to whether Plaintiff ever received Defendants' responses to those discovery requests.

More than six months now have elapsed since the June 20, 2008 date which appears on Plaintiff's discovery requests. (*See* attachments to Doc. #23). In the intervening months since Plaintiff's September 23, 2008 request for a stay (*see* Doc. 23), however, Plaintiff neither has supplemented his response in opposition to summary judgment, nor filed a motion to compel or otherwise sought the Court's assistance in an effort to acquire any discovery materials not produced by Defendants.

Although inclined to allow Plaintiff some latitude based upon his *pro se* status, this Court has no basis for granting Plaintiff relief where the record offers nothing to indicate that Plaintiff's discovery requests remain unfulfilled, or that Plaintiff diligently pursued available remedies to obtain such discovery. Moreover, given that even in the absence of discovery from Defendants, Plaintiff was able to articulate at least colorable arguments in opposition to summary judgment – including producing his own affidavit and putative transcripts of purportedly contradictory testimony by Defendants (*see id.*, Exh. A) – no further delay in addressing Defendants' motion for summary judgment appears to be warranted. The "motion to stay" request contained in Plaintiff's response to the summary

judgment motion therefore should be denied.

b.      *Defendants' Motion for Summary Judgment*

In conjunction with their motion for summary judgment, Defendants offer their
own affidavits, plus that of Plaintiff's putative former cell mate, as evidence to establish
that the amount of force Defendants used against Plaintiff on December 17, 2006 was not
unreasonable, as a matter of law.  (*See* Doc. #20).  Were the documents thus offered by
Defendants the only cognizable evidence before the Court, Defendants indeed would
appear to be entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(e)(2)
(providing that if a party opposing summary judgment does not "by affidavits or . . .
otherwise . . . set out specific facts showing a genuine issue for trial . . .[, then] summary
judgment should, if appropriate, be entered against that party"); *see also Street*, 886 F.2d
at 1479*; Metiva*, 31 F.3d at 379.

Plaintiff's responsive filing, however, contains not only Plaintiff's arguments
against imposing summary judgment, but also his own affidavit as to the facts underlying
his complaint.  (*See* Doc. #23).  Omitting those portions not pertinent to our present
inquiry, that duly sworn affidavit can be summarized as follows:

> [O]n December 17, 2006, . . . [Huber Heights Police] Officer
> Waler tased me without any prior warning and without any
> prompting as I stepped out of a stopped vehicle to inquire
> about . . . the driver[,] who is my younger brother. * * * . . . I
> regained enough composure to flee from this officer [to whom]
> I had done nothing  . . . out of fear for my personal safety.
> Officer Waler gave chase and tased me a second time[,] for no
> apparent reason.  I . . . stopped running to flag [down a] second
> [Huber Heights police] officer [Sgt. Charles Kash] . . . for

some assistance. Sgt Kash got out of his cruiser and came
towards me, at which time [O]fficer Waler ran up from behind
and grabbed me around my throat and flipped me to the
ground. While [I was] on the ground, both officers pepper
sprayed me in the face, and Sgt. Kash placed his knee on the
back of my neck while pulling my right arm outwards and
upwards at the same time. Officer Waler proceeded to punch
[and] knee [me], and [to] twist my left arm while it was behind
my back . . . While [I was] being severely beaten by [O]fficers
Waler and Kash, a third [Huber Heights police] officer[, ] . . .
Robert Hartman[,] . . . ran up and tased me for a third time. At
this time[,] my left hand was in handcuffs[,] I had two large
officers on my back, and I could not breathe without difficulty.

(Doc. #23, Taylor Affidavit, ¶¶ 3-12]. For purposes of summary judgment, the Court is

constrained to accept Plaintiff's representations to that effect.

Defendants' subsequent reply in support of summary judgment (Doc. #30) focuses

on countering in turn each of the arguments raised in Plaintiff's responsive filing. For

example, in response to Plaintiff's argument that Defendant Waler's trial testimony does

not support Defendants' suggestion that Waler warned Plaintiff that "a taser would be

deployed" (*see* Doc. #23, ¶ I), Defendants urge that there is no constitutional duty to warn

a fleeing suspect prior to using a taser. (*See* Doc. #30, pp. 1-2). While that counter-

argument may serve to neutralize Plaintiff's argument regarding any alleged lack of

warning, however, Defendants have not similarly overcome Plaintiff's proffered evidence

in the form of his affidavit.

Contrary to Defendants' implication, by merely referring to Defendants' trial

testimony, Plaintiff did not thereby adopt that testimony as his own "version of the facts."

(*See* Doc. #30, p. 2). Rather, Plaintiff's version of the facts alleges that Defendant Waler

initially used the taser not only without warning, but also "without any prompting." (*See* Doc. #23, Taylor Affidavit, ¶ 4). Notwithstanding any evidence they have presented to refute that factual assertion, Defendants have not demonstrated (and presumably <u>cannot</u> demonstrate) that unprovoked use of a taser as described in Plaintiff's affidavit would not constitute a constitutional violation. Because the Court in ruling on a motion for summary judgment <u>must</u> view all record evidence in the light most favorable to the opposing party, *see Anderson*, 477 U.S. at 248, Defendants' affidavits and testimony suggesting that the taser was deployed only in response to Plaintiff's defiant actions is not dispositive of the facts, and merely highlights a credibility issue that must be resolved by the trier of fact.

Similarly, in response to Plaintiff's argument that Defendants have not proved that he was "combative" (Doc. #23, ¶ V), Defendants urge that combativeness "is not the standard for determining whether a use of force is reasonable." (Doc. #30, p. 3). That counter-argument, however, fails to address the additional <u>evidence</u> presented by Plaintiff, again in the form of his affidavit, alleging that he fled only "out of fear for [his] personal safety" after being tased by Defendant Waler, to whom he had "done nothing." (Doc. #23, Taylor Affidavit, ¶ 6). Case law suggesting that "combativeness" is not a legal prerequisite to the use of force again does nothing to counter Plaintiff's <u>factual</u> contentions, and Defendants have directed the Court to no legal authority suggesting that a constitutional claim for unreasonable use of force cannot be premised on police action used to subdue a suspect who fled only after unprovoked use of a taser. Once again, the parties' contradictory factual accounts implicate credibility considerations entrusted

exclusively to the trier of fact, and defy resolution via summary judgment.

The same result follows as to each counter-argument posed in Defendants' reply. Defending the Carpenter affidavit as "admissions by a party-opponent" constituting cognizable evidence (Doc. #30, p. 2) rather than inadmissible hearsay as alleged by Plaintiff (*see* Doc. #23, ¶ III), Defendants ignore the ways in which Plaintiff's affidavit controverts Mr. Carpenter's averments, leaving disputed issues of fact. (*Compare* Doc. #20, Exh. D, Carpenter Affidavit, to Doc. #23, Taylor Affidavit). As Plaintiff's affidavit in effect denies all statements attributed to him by Mr. Carpenter, Mr. Carpenter's affidavit cannot be relied upon to justify judgment as a matter of law.

Similarly, Defendants' rejoinder to Plaintiff's semantical argument about the placement of Defendant Kash's knee – *i.e.*, "even if [Defendant] Kash had placed his knee directly on Plaintiff's neck, that act, standing alone, is not some sort of per se excessive force" (Doc. #30, pp. 2-3) – also fails to counter the evidence presented in the form of Plaintiff's affidavit. Plaintiff's allegations of unreasonable force are not limited to the placement of Kash's knee. Again, Plaintiff also alleges that he first was tased by Defendant Waler "without any prompting;" was tased a second time by Waler "for no apparent reason;" was tackled and pinned down by Defendant Kash while both Waler and Kash "pepper sprayed [him] in the face" and Waler punched and kneed him; and finally, was tased a third time by Defendant Hartman while both Waler and Kash held Plaintiff down. (Doc. #23, Taylor Affidavit, ¶¶4-13). In view of that depiction, the placement of Defendant Kash's knee is an issue of little consequence as regards summary judgment.

Stated succinctly, to grant the relief requested by Defendants in their motion for summary judgment, this Court would have to accept the version of facts proffered by Defendants, and wholly disregard Plaintiff's affidavit to the extent that it differs therefrom. While Defendants no doubt believe that countervailing credibility considerations warrant that result, such determinations must await trial. Because the parties' conflicting evidence implicates disputed issues of material fact which this Court is not empowered to resolve at this juncture, Defendants' motion must be denied.

Unfortunately for Defendants, the same genuine issues of material fact which preclude summary judgment on the merits of Plaintiff's complaint also prevent the Court from concluding that Defendants have qualified immunity as to Plaintiff's claims. The doctrine of qualified immunity precludes actions for damages against government officials on the basis of discretionary actions that do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc*) (internal quotation marks omitted). A qualified immunity analysis requires the court to determine (1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances. *Id.*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, a government agent is entitled to qualified immunity if he or she reasonably (even if erroneously) could have believed that his or her actions were lawful, in light of clearly established law. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

While Defendants reasonably might have believed that the actions described in their own affidavits and testimony were lawful under then-existing law, it is not Defendants' version of their actions that is before the Court on their motion for summary judgment. Rather, the Court must consider whether reasonable police officers could have believed that Defendants' actions as described in Plaintiff's affidavit would not violate Plaintiff's constitutional rights. The Court concludes that they could not.

As recognized in one of the very cases cited by Defendants, the reasonableness of any use of force depends upon a variety of factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). In this case, even under Defendants' version of facts, Plaintiff was suspected of (and eventually convicted of) possession of narcotics, not a crime of violence, and apparently was not armed.[5] Conversely, Plaintiff claims that he did nothing to provoke any use of force, and fled only to protect himself from Defendant Waler's unprovoked initial taser attack. He also contends that Defendants again used pepper spray and the taser and continued to pummel him, even after he had been subdued. (Doc. #23, Taylor Affidavit).

The Sixth Circuit has "held repeatedly that the use of force after a suspect has been

---

[5]Again, the fact that Plaintiff was charged with but not convicted of assault on a police officer and attempting to take his weapon has no legal consequence for purposes of bolstering Defendants' summary judgment request.

incapacitated or neutralized is excessive as a matter of law." *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (citing *Shreve v. Jessamine County Fiscal Court,* 453 F.3d 681, 687 (6th Cir.2006); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004), *cert. denied*, 544 U.S. 975 (2005); *Phelps v. Coy,* 286 F.3d 295, 301 (6th Cir.2002), *cert. denied*, 537 U.S. 1104 (2003) ("[T]here was simply no governmental interest in continuing to beat [plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was.")). The fact that a suspect was not completely handcuffed at the time he was struck "does not preclude a finding of unreasonableness." *Id.* (citing *Tapp v. Banks,* 1 F. Appx. 344, 350 (6th Cir.2001)).

The Circuit also has recognized that the right to be free from such force under such circumstances has been established since at least 1994. *Id.* at 608 (citing *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994) (spraying compliant suspect with mace, "which is usually blinding and incapacitating . . . would constitute excessive force as a matter of law."). Accordingly, even assuming that Defendants were justified in pursuing and attempting to subdue Plaintiff after he fled, under Plaintiff's version of the facts, there could have been no reasonable basis for them to have believed it was lawful to punch or to use pepper spray or a taser on Plaintiff once they had gained control over him. The Court thus cannot determine that Defendants are entitled to qualified immunity as a matter of law, and their motion for summary judgment on that basis must be denied as well.

**IT THEREFORE IS RECOMMENDED THAT:**

1.     Plaintiff's motion to stay Defendants' motion for summary judgment (Doc.

#23) be DENIED as moot; and

2.      Defendants' Motion for Summary Judgment (Doc. #20) be DENIED without prejudice.


_____, 2008          s/   Sharon L. Ovington_____

                                         Sharon L. Ovington

                               United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).